708 A.2d 81

COMMONWEALTH of Pennsylvania, Appellant,

v.

Michael Reuben BROWN, Appellee.

Supreme Court of Pennsylvania.

Submitted March 3, 1997.

Decided Feb. 17, 1998.

Thomas W. Corbett, Jr., Mary Benefield Seiverling, Harrisburg, Catherine Marshall, Philadelphia, for the Com.

Michael Reuben Brown, Pro Se.

Barry L. Smith, Warren, for Jay William Buckley.

John J. Kerrigan, Newtown, for Criminal Defense Lawyers, Amicus Curiae.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## ORDER

PER CURIAM.

THE COURT BEING EVENLY DIVIDED, THE ORDER OF THE SUPERIOR COURT IS AFFIRMED.

NIGRO, J., files an Opinion in Support of Affirmance in which FLAHERTY, C.J., joins and ZAPPALA, J., concurs in the result.

CAPPY, J., files an Opinion in Support of Reversal in which CASTILLE and NEWMAN, JJ., join.

SAYLOR, J., did not participate in the consideration or decision of this matter.

### OPINION IN SUPPORT OF AFFIRMANCE

NIGRO, Justice.

In this case, the Attorney General of the Commonwealth of Pennsylvania appeals from the Superior Court's affirmance of the trial court's order compelling the Attorney General to prosecute a private criminal complaint against Appellee Michael Reuben Brown. At issue is the proper standard of review to be used by a trial court when reviewing a prosecutor's disapproval of a private criminal complaint. For the reasons presented herein, we would affirm.

In September 1989, police in Warren County, Pennsylvania were investigating the kidnapping, rape, and murder of Kathy Wilson, a resident of Chautauqua County, New York.[1] Hoping to further the investigation, the New York and Pennsylvania State Police offered a $26,000 reward for information leading to discovery and conviction of the killer. Appellee Brown, a sixteen-year-old New York resident, contacted the authorities and claimed to have information about the case.

The police arranged for Brown to be transported to Pennsylvania, ostensibly to receive the reward. When he arrived at the State Police barracks in Warren County, however, he

---

1. Ms. Wilson disappeared from Chautauqua County on May 18, 1988. Her body was found in a wooded area in Warren County, Pennsylvania on September 24, 1989.

was immediately arrested and charged in the Wilson killing. In response, Brown identified Jay William Buckley as the killer. Buckley was then arrested and charged with kidnapping, rape, and murder. In return for his testimony against Buckley, Brown was permitted to plead guilty to the lesser charges of indecent assault, felonious restraint, and hindering apprehension.

At Buckley's trial, Brown testified that he had been with Buckley and had witnessed him kidnap, rape, and kill Ms. Wilson. However, during cross-examination, defense counsel pointed out numerous inconsistencies between Brown's testimony and his previous statements to police. As a result, Brown eventually admitted that he had repeatedly lied both in his statements to police and at Buckley's preliminary hearing. In all, Brown admitted to over 700 instances of falsification or perjury in connection with the abduction and murder of Ms. Wilson. After a four-week trial, Buckley was acquitted on all charges on June 6, 1991.

Brown, however, had pled guilty to lesser charges. After being sentenced to seven to fourteen years in prison, he filed a motion to withdraw his guilty plea and for reconsideration of sentence. A hearing was held, at which Brown stated that he had lied at Buckley's trial and that he was never an eyewitness to any of the crimes in the Wilson case. He claimed that Buckley had simply told him about having committed the crime. Brown stated that he had initially told the police that he was an eyewitness in order to receive the reward money offered. He then claimed that, once arrested, he was coached and prompted by police and the district attorney to repeatedly change his story so that it coincided with the physical evidence in the case. He stated that he altered his accounts in order to satisfy the authorities' desire for an eyewitness and because he was threatened with the withdrawal of his plea agreement.

The trial court granted Brown's motion to withdraw his guilty plea, finding that the police had worked with Brown, prompting him to align his story with the physical evidence

and with the time frame of the events.[2] Although the district attorney was authorized to reinstate the original charges against Brown, he chose not to prosecute, and the charges were nolle prossed. The district attorney also chose not to file charges against Brown for his false statements to police or for his perjury at Buckley's preliminary hearing and trial.

In response, Buckley filed a private criminal complaint with the district attorney's office, pursuant to Pa. R.Crim. P. 133, on November 21, 1991.[3] Buckley alleged that Brown had committed nine offenses: three acts of perjury and one act each of making false reports to law enforcement authorities, tampering with or fabricating physical evidence, hindering apprehension or prosecution, obstructing the administration of law or other governmental function, making unsworn falsifications to authorities, and criminal conspiracy.

**2.** After noting some of the instances of coaching and some of the more glaring inconsistencies in Brown's statements, the trial court stated:

> The Commonwealth's efforts in rehabilitating [Brown] and refreshing his memory over a two-year period are acceptable; however, it is apparent objectively [that] lapse of memory cannot support or account for the change of place of abduction of the victim, the lack of [Brown's] knowledge of [the] color of her clothing and the style thereof; nor account for a misdescription of the ring the victim wore, the different locations where she was taken, and the Commonwealth's full knowledge of multiple contradictions. If there were any doubt, it did not last long with the Buckley jury in exonerating Buckley within six hours of deliberation after a four-week trial.
> We are compelled to conclude that the Commonwealth knew [Brown's] assertion he was an eyewitness was without merit.

Trial Ct. Op., dated 10/22/91, at 12 (footnote omitted).

**3.** Buckley's complaint was filed pursuant to Pa. R.Crim. P. 133, which was amended and renumbered as Rule 106 in 1994. At the time the complaint was filed, Rule 133 stated:

> (a) When the affiant is not a law enforcement officer and the offense(s) charged include(s) a misdemeanor or felony which does not involve a clear and present danger to any person or to the community, the complaint shall be submitted to an attorney for the Commonwealth, who shall approve or disapprove without unreasonable delay.
> (b) If the attorney for the Commonwealth
> * * *
> (2) Disapproves the complaint, the attorney shall state the reasons on the complaint form and return it to the affiant. Thereafter the affiant may file the complaint with a judge of the Court of Common Pleas for approval or disapproval. . . .

Trial Ct. Op., dated 12/30/93, at 6; *see also* Pa. R.Crim. P. 106.

In the complaint, Buckley named the district attorney and a State Police officer as Brown's co-conspirators, alleging that they had conspired to present false testimony at Buckley's trial. The district attorney therefore asserted a conflict of interest and asked the Attorney General to review Buckley's complaint.[4] The Attorney General did so and, in July 1993, disapproved the complaint, stating:

—There is no credible proof of a criminal conspiracy and the available evidence tends to negate any conspiratorial accord.

—Mr. Brown's conflicting accounts were patently obvious to everyone and rather than prejudicing Mr. Buckley, they aided his defense and substantially contributed to his acquittal.

—The trial resulting from [Buckley's] complaint, if [it] were approved would consume substantially more court time and resources.

Furthermore, Mr. Brown has already been incarcerated for two years [as a result of his guilty pleas in the Wilson case].

The decision to decline prosecution in this matter is based upon factors broader than simply the quantum of evidence available and is founded in the policy considerations inherent in this Office as public prosecutor.

R.R. at 129a (Disapproval of Buckley Complaint, dated 7/26/93).

Pursuant to Pa. R.Crim. P. 133(b)(2), Buckley sought approval of the complaint from the trial court. After a hearing, the court determined that the Attorney General had committed a gross abuse of discretion in disapproving the first eight charges in the complaint—all of them except the conspiracy charge. The court therefore directed the Attorney General to prosecute Brown on everything but the conspiracy charge.

The Attorney General appealed, and a divided Superior Court panel affirmed. After reargument *en banc*, the Superi-

4. Pursuant to the Commonwealth Attorneys Act, 71 P.S. § 732–205(a)(3) (1990).

or Court again affirmed, finding that the trial court had not erred in concluding that the Attorney General had committed a gross abuse of discretion by disapproving Buckley's complaint. The Attorney General again appealed, and this Court granted allocatur. We must now determine the proper standard of review to be used by the trial court when it reviews a prosecutor's policy-based disapproval of a private criminal complaint under Pa. R.Crim. P. 133.[5]

■ Initially, we find that the lower courts in this case erred in applying a gross abuse of discretion standard. This Court has previously indicated that there is no distinction between a gross abuse of discretion standard of review and an abuse of discretion standard. *See Moore v. Moore*, 535 Pa. 18, 28 n. 4, 634 A.2d 163, 168 n. 4 (1993). In other words, the term "gross" is mere surplusage; there is no separate and distinct gross abuse of discretion standard of review. *See id.; see also Coker v. S.M. Flickinger Co., Inc.*, 533 Pa. 441, 447, 625 A.2d 1181, 1184–85 (1993) (defining abuse of discretion). Thus, the lower courts erred in reviewing the Attorney General's actions under a gross abuse of discretion standard.

■ We note that

[a] District Attorney has a general and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case. *See Commonwealth v. Ragone*, 317 Pa. 113, 176 A. 454 (1935); *Commonwealth ex rel. Specter v. Freed*, 424 Pa. 508, 228 A.2d 382 (1967).

*Commonwealth v. DiPasquale*, 431 Pa. 536, 540–41, 246 A.2d 430, 432 (1968); *accord Commonwealth v. Stipetich*, 539 Pa. 428, 430, 652 A.2d 1294, 1295 (1995); *Commonwealth v. Whitaker*, 467 Pa. 436, 443, 359 A.2d 174, 177 (1976). "Thus, the district attorney is permitted to exercise sound discretion to refrain from proceeding in a criminal case whenever he, in good faith, thinks that the prosecution would not serve the

5. As noted earlier, Rule 133 has been renumbered as Rule 106.

best interests of the state." *Commonwealth v. Malloy*, 304 Pa.Super. 297, 303, 450 A.2d 689, 692 (1982).

In *Commonwealth v. Benz*, 523 Pa. 203, 565 A.2d 764 (1989), a plurality decision, this Court distinguished between a prosecutor's disapproval of a private complaint for reasons of policy and a disapproval based on a legal evaluation of the sufficiency of the complaint. The district attorney in *Benz* had disapproved a private complaint because it failed to make out a prima facie case. The trial court reviewed that decision and affirmed the disapproval. On appeal, the Superior Court reversed after concluding that the evidence did establish a prima facie case. This Court then affirmed and explained that because the district attorney's decision not to prosecute was based on a legal evaluation of the merits of the case, the courts were authorized to determine the propriety of that decision. *See Benz*, 523 Pa. at 208, 565 A.2d at 767. The Opinion Announcing the Judgment of the Court stated: "because the reason [for the disapproval] was the ultimate determination by the district attorney that no crime had been committed, this Court is authorized to review that determination without the special deference afforded a separate branch of government." *Id.* at 208 n. 4, 565 A.2d at 767 n. 4.

Thus, the Court in *Benz* essentially endorsed a *de novo* review by the trial court when a prosecutor's disapproval is based on a legal determination of the sufficiency of the complaint. *See Commonwealth v. Jury*, 431 Pa.Super. 129, 636 A.2d 164 (1993) (citing *Benz* and conducting *de novo* review of prosecutor's disapproval of complaint based on failure to make out prima facie case), *appeal denied*, 537 Pa. 647, 644 A.2d 733 (1994); *Commonwealth v. Metzker*, 442 Pa.Super. 94, 658 A.2d 800 (1995). The *Benz* plurality recognized, however, that when a prosecutor's disapproval is based on policy concerns, a *de novo* review would be improper: "[i]f the district attorney had stated policy reasons to support the decision not to prosecute, this Court would show the deference accorded to such a discretionary use of the executive powers conferred in that officer." *Benz*, 523 Pa. at 208 n. 4, 565 A.2d at 767 n. 4.

■ In keeping with that statement, we believe that a trial court should not interfere with a prosecutor's policy-based decision to disapprove a private complaint absent a showing of bad faith, fraud, or unconstitutionality. Application of this standard recognizes that proper deference must be given to the discretionary decisions of a prosecutor—a member of the executive branch—while acknowledging the authority and responsibility of the judiciary to ensure justice in the criminal court system.

The term "bad faith" has been defined as "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of ... moral obliquity...." Black's Law Dictionary 139 (6th ed.1990). "Obliquity" involves a "deviation from moral rectitude or sound thinking." Merriam–Webster's Collegiate Dictionary 802 (10th ed.1996).

■ On the facts of this case, we do not believe that the decision to disapprove Buckley's complaint exemplifies moral rectitude and sound thinking. The Attorney General declined to prosecute Brown on the first eight charges of the complaint for three reasons: 1) because the inconsistencies in Brown's story were "patently obvious to everyone" and actually worked to Buckley's advantage by "substantially contribut[ing] to his acquittal," 2) because a trial would "consume substantially more court time and resources," and 3) because Brown had already been incarcerated for two years as a result of his guilty pleas in the Wilson case. R.R. at 129a (Disapproval of Buckley Complaint, dated 7/26/93).

Addressing these justifications in reverse order, we note first that the fact that Brown had already been in jail for two years in connection with the Wilson case is essentially irrelevant to the decision whether or not to prosecute him for perjury. If Brown's "time served" is relevant at all, it would be at sentencing, not at the complaint stage. Moreover, as the trial court pointed out, an individual who commits a crime while incarcerated is charged and tried for those crimes like any other defendant. Accordingly, this alleged policy argu-

ment fails to support the Attorney General's disapproval decision.

Next, the Attorney General claimed that the trial that would result from an approval of Buckley's complaint would be too costly in terms of both time and money. While the expenditure of judicial and prosecutorial resources is a valid factor to consider, we simply find no merit to the Attorney General's assertion that in this case a trial of Brown would be too time-consuming and costly. Brown is an admitted perjurer. Indeed, his admissions form part of the notes of testimony of Buckley's trial. Given the overwhelming evidence of Brown's guilt, we agree with both lower courts that the cost of prosecuting him would not be excessive. We also note that the Commonwealth routinely expends substantial sums prosecuting less serious offenses.

Third, the Attorney General claimed that Buckley's complaint did not merit approval because Brown's inconsistencies and lies were obvious to all concerned and actually benefitted Buckley by securing his acquittal. We find this argument completely meritless, as did both lower courts. As the Attorney General admits, Brown's falsehoods were apparent to all. The Attorney General cannot claim that those falsehoods and inconsistencies were not likewise apparent *to the prosecution prior* to Buckley's trial.[6] However, despite its knowledge of

6. In its opinion allowing Brown to withdraw his guilty pleas on the charges in the Wilson case, the trial court found itself "compelled to conclude [that] the Commonwealth knew [Brown's] assertion he was an eyewitness was without merit." Trial Ct. Op., dated 10/22/91, at 9–10. In support of this conclusion, the trial court noted, *inter alia*, the following:

> [A] graphic example that the Commonwealth recognized it had an extreme problem with [Brown's] credibility is the letter of Mr. Massa, District Attorney, on January 15, 1991, to [Brown's] then counsel [discussing the proposed revocation of Brown's plea agreement]:
> I have reached this conclusion reluctantly and only after a thorough and exhaustive review of the file which leads to the inescapable conclusion that Mr. Brown has not told the absolute truth on all matters relavent [sic] to the instant case, as is requisite by our agreement. His ongoing attitude 'we need him but he does not need us', is erroneous and has led him to continuously 'jerk us around' from one contact to the next.

the blatant inconsistencies in Brown's story and its consequent awareness of how lacking in credibility Brown actually was, the Warren County District Attorney's office nonetheless proceeded to subject Buckley to a prosecution for kidnapping, rape, and murder, with Brown as the star witness. To now claim that Brown should not be tried for his admitted perjuries because they helped acquit Buckley is simply unacceptable given the prosecution's prior knowledge of Brown's falsehoods. In short, to the extent that Brown's patently inconsistent statements resulted in the prosecution of Buckley, the argument can be made that Buckley should not have been tried in the first place and therefore should never have been in need of an acquittal.[7] Given this, we cannot accept the Attorney General's argument that Brown's perjury should be excused because it helped Buckley secure that acquittal.

In sum, we are unable to conclude that the Attorney General's decision not to prosecute Brown's flagrant criminal conduct was in furtherance of any valid policy of this Commonwealth. While the discretionary decisions of a prosecutor must be given due deference, it is clear that the Attorney General's position in this case represents a "deviation from moral rectitude [and] sound thinking," and is simply not tenable. Thus, we are compelled to conclude that the Attorney General acted in bad faith in disapproving Buckley's complaint.

Accordingly, although the lower courts in this case erred in applying a gross abuse of discretion standard, we nonetheless should affirm the judgment of the Superior Court.[8]

Trial Ct. Op., dated 10/22/91, at 9–10. This letter was drafted and sent almost four months prior to the start of Buckley's trial in May 1991.

**7.** As Judge Del Sole noted in *Metzker,* "[t]he power to prosecute is enormous, bringing as it does the resources of the Commonwealth to bear on the accused. Thus, we expect those entrusted with this authority to exercise it wisely...." *Metzker,* 442 Pa.Super. at 97, 658 A.2d at 801.

**8.** "It is well settled that, even though an order is based on erroneous reasoning, this Court may affirm if the result is correct for any reason." *Baltimore & Ohio Railroad Co. v. Commonwealth of Pennsylvania, Dep't of Labor and Industry,* 461 Pa. 68, 83 n. 10, 334 A.2d 636, 643 n. 10,

FLAHERTY, C.J., joins in this opinion.

ZAPPALA, J., concurs in the result.

## OPINION IN SUPPORT OF REVERSAL

CAPPY, Justice.

The precise issue presented in this appeal is the articulation of the proper standard of review to be employed by a trial court when called upon to consider the propriety of a prosecutor's policy-based decision to forego a criminal prosecution. As this appeal concerns the role of the judiciary in reviewing the propriety of a decision rendered by an independent and co-equal branch of government, in this case the executive branch, this court must undertake its task with deference towards maintaining the delicate balance of power between the branches. *Beckert v. Warren*, 497 Pa. 137, 144, 439 A.2d 638, 642 (1981).

The opinion in support of affirmance sets forth the correct standard of review as one requiring a showing of fraud, bad faith or unconstitutionality. This standard sufficiently safeguards the concept of separation of powers which is at the heart of this appeal.[1] It is the definition of the terms employed within the standard of review and the application of this standard which necessitates this opinion in support of reversal.[2]

*appeal dismissed*, 423 U.S. 806, 96 S.Ct. 14, 46 L.Ed.2d 26 (1975); *Bell Atlantic Mobile Systems, Inc. v. Borough of Baldwin*, 677 A.2d 363 (Pa.Cmwlth.1996), *appeal denied*, 548 Pa. 620, 693 A.2d 590 (1997).

1. Where the prosecutor's decision is based on a legal conclusion this court may exercise de novo review of the sufficiency of that legal conclusion. *Accord Commonwealth v. Benz*, 523 Pa. 203, 565 A.2d 764 (1989).

2. The opinion in support of affirmance defines bad faith as follows:

The term "bad faith" has been defined as "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of ... moral obliquity...." Black's Law Dictionary 139 (6th ed.1990). "Obliquity involves a deviation from moral rectitude or sound thinking." Merriam–Webster's Collegiate Dictionary 802 (10th ed.1996).

*Commonwealth v. Brown*, —— Pa. ——, ——, 708 A.2d 81, 85 (Pa.1998).

First, the term "bad faith" has been defined in case law as an action undertaken with the purpose of fraud, dishonesty or corruption. *Thunberg v. Strause*, 545 Pa. 607, 682 A.2d 295 (1996). Second, the opinion in support of affirmance, in choosing to rely solely on Black's Law Dictionary for its definition, has focused on the most obscure part of the definition provided. The entire definition as set forth is certainly of more assistance to the legal community in comprehending the import of this term as it provides:

> **Bad faith.** The opposite of "good faith," generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Term "bad faith" is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

*Black's Law Dictionary*, 6th Edition 1990.

Given the nature of the task we are undertaking in this appeal, that is: enunciating the proper standard of review in situations where one branch of government is reviewing policy-based decisions of another branch of government, it is imperative that we provide the clearest possible statement of that standard for the benefit of all concerned. Thus, following the dictates of our decision in *Thunberg* and the cases cited therein which hold that bad faith is shown where the action under review was undertaken with a dishonest or corrupt purpose provides the simplest, clearest and most workable standard available.[3] By defining the standard as such, consistency in its application is maintained in all areas of the law.

---

**3.** The term fraudulent was purposely omitted as "fraud" is an element separate and apart from bad faith, providing a distinct reason for overturning a decision by the prosecutor in declining to pursue a prosecution.

Contrary to the conclusions of the opinion in support of affirmance, the reasons proffered by the Attorney General in declining to pursue a prosecution of Brown fails to reveal any indication of bad faith.[4]

The opinion in support of affirmance focuses on three of the reasons relied upon by the Attorney General in reaching the decision not to prosecute: 1) Brown has already been incarcerated for two years; 2) substantial time and resources of their office would be consumed by a trial on these charges; and 3) the inconsistencies in Brown's testimony were so obvious that it contributed to the acquittal of Buckley.[5] The opinion in support of affirmance rejects each of these proffered policy-based reasons and concludes therefrom that the decision of the Attorney General was rendered in bad faith.

First, in rejecting the Attorney General's consideration of Brown's two year incarceration, the opinion in support of affirmance focuses on the relevancy of this concern to sentencing, thus dismissing it as a valid pre-indictment consideration. The focus here is misplaced. From a judicial perspective pretrial incarceration is a concern only relevant at sentencing. However, here the court is reviewing a policy decision of the executive branch. In that light, the weighing of Brown's time in jail against the potential sentence should the prosecution succeed is certainly of relevant concern in deciding whether to prosecute. In any case, consideration of Brown's two year incarceration certainly does not reveal bad faith.

Second, in rejecting the Attorney General's concern for the expenditure of resources in pursuing this prosecution, the opinion in support of affirmance looks to the fact that the evidence necessary to this prosecution has been amassed substantially within the prior Buckley trial and that less serious offenses are routinely prosecuted at substantial cost.

4. The opinion in support of affirmance concedes that neither fraud nor unconstitutionality was shown and it focuses only upon the element of bad faith in reaching its conclusion.

5. The opinion in support of affirmance ignores many of the other policy reasons offered by the Attorney General. For example, the prosecution considered Brown's age at the time of the crime (16), his low I.Q. (87), and his unstable psychological state.

The dismissal of the allocation of resources by the Attorney General is inappropriate. A decision on the distribution of funds and man hours within the exclusive control of one branch of government should not lightly, and without good cause, be overborne by another branch of government.

Third, in rejecting the Attorney General's consideration of the fact that the inconsistencies of Brown's testimony actually aided the acquittal of Buckley, the opinion in support of affirmance chastises the prosecution for its original decision to prosecute Buckley using Brown as its star witness. There is an attraction to pointing out the questionable logic of this proposition. However, the conclusion that in proffering this reason in support of the decision not to prosecute the Attorney General displayed bad faith, is of equally questionable logic.

Apparently the opinion in support of affirmance finds bad faith in the initial decision to prosecute Buckley in reliance on Brown's testimony. However, it is not this decision which is under review herein but rather the decision on whether or not to prosecute Brown. Questionable logic is not the equivalent of dishonesty or corruption.

Accordingly, for the reasons stated herein, the decision of the Superior Court should be reversed.[6]

I respectfully dissent.

CASTILLE and NEWMAN, JJ., join this Opinion in Support of Reversal.

---

**6.** A potential problem exists with the order of the opinion in support of affirmance that the Attorney General now go forward with the prosecution of the private criminal complaint as it is at odds with the legislative directive found in 16 P.S. § 1409, which would require the attorney bringing the private criminal complaint to prosecute same. *See Commonwealth v. McHale,* 97 Pa. 397 (1881).