**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Erica MICHALIGA, Appellee.**

Superior Court of Pennsylvania.

Submitted Feb. 25, 2008.

Filed April 23, 2008.

David W. Lupas, Assistant District Attorney, Wilkes–Barre, for Commonwealth, appellant.

John A. Bednarz, Wilkes–Barre, for appellee.

BEFORE: GANTMAN, ALLEN and HUDOCK, JJ.

OPINION BY ALLEN, J.:

¶ 1 This is an appeal by the Commonwealth from the order of the trial court directing it to prosecute a private criminal complaint that the district attorney's office had previously disapproved. We reverse.

¶ 2 The pertinent facts[1] and procedural history may be summarized as follows: In April 2006, Ron Romanoski, individually, and t/a P & R Builders ("Romanoski") entered into a contract with Erica Michaliga ("Michaliga"), the owner and operator of Atmosphere Salon and Day Spa ("the salon") for repairs caused by fire damage to the salon. According to Romanoski's private criminal complaint, several other contractors performed work at the salon and they were fully compensated by the salon via a two-party check issued by its insurer, Hartford Insurance Company ("Hartford"). Hartford forwarded a single-party check to Michaliga, but she apparently failed to use the monies received to compensate Romanoski. Romanoski filed a private criminal complaint on December 1, 2006. Within this complaint, Romanoski asserted that:

despite repeated requests to [Michaliga] to turn over the monies that were issued for payment of work performed by him, [he] has not received payment, and [Michaliga] has advised [Romanoski] and others that she does not intend to pay [him] and [Romanoski] can do whatever he wants to, even if it involves criminal charges of theft being lodged against her. The amount due and owing [Romanoski] pursuant to the contract entered into with [Michaliga] is $51,925.00. [Michaliga] has been unjustly enriched by cashing the check issued for the purpose of paying [Romanoski] for services rendered, and has failed to make required dispositions of funds received, thereby violating 18 Pa.C.S.A. §§ 3921 and 3927.

Private Criminal Complaint, 12/1/06, at 2.

¶ 3 On December 12, 2006, Romanoski's private criminal complaint was approved by Luzerne County Assistant District Attorney Timothy M. Doherty. Although a preliminary hearing in the matter was originally scheduled for January 18, 2007, it was continued on four occasions upon either the request of counsel for Michaliga or Romanoski. According to the Commonwealth, during this time the district attorney's office further reviewed the private criminal complaint and the supporting documentation. Multiple assistant district attorneys reviewed the complaint and ultimately concluded that it should never have been approved due to the civil nature of the allegations. "Additionally, there

---

1. The facts are taken from the private criminal complaint.

was a collective belief that [Romanoski] was attempting to use the Office of the District Attorney in an effort to redress grievances for which there are adequate civil remedies." Commonwealth's Brief at 7. It was further concluded that the case lacked prosecutorial merit due to the potential difficulty in sustaining a conviction.[2] Assistant District Attorney Doherty concurred with this assessment, and, therefore, ordered that the charges against Michaliga be withdrawn.

¶ 4 In a letter dated March 29, 2007, the Luzerne County District Attorney's Office provided notice to the Central Court Administrator that the criminal charges pending against Michaliga should be withdrawn. Presumably, the Central Court notified Michaliga that the charges had been withdrawn and the matter was removed from the court docket. Romanoski apparently was not notified of this withdrawal, and he and his counsel appeared for a preliminary hearing that was scheduled for May 17, 2007.

¶ 5 After receiving a copy of the March 29th letter, Romanoski's counsel wrote a letter to the district attorney's office in which he asked for an explanation as to why the charges were withdrawn. After failing to receive a timely response, Romanoski, on June 7, 2007, filed a "Petition for Reversal of the District Attorney's Decision to Withdraw Charges Against [Michaliga], and Approval of Private Criminal Complaint." Within the petition, Romanoski recounted the procedural history of the case and asserted that Michaliga had clearly committed criminal acts that constitute theft by unlawful taking or disposition and theft by failure to make a required disposition of funds received.

¶ 6 The trial court issued upon the Commonwealth a rule to show cause why the relief requested by Romanoski should not be granted. A hearing on Romanoski's petition was held on July 2, 2007. The brevity of the hearing transcript allows for its complete citation as follows:

[ROMANSKI'S COUNSEL]: There was no answer filed, Your Honor. I have an Order.

THE COURT: Why did the District Attorney withdraw these charges? This is atrocious.

[ASSISTANT DISTRICT ATTORNEY]: Your Honor, it's very simple. Basically, we've looked over this, five or six ADA's looked at this, and it's plainly a civil matter—

THE COURT: No, it's not. Was the check issued to both of you?

[ASSISTANT DISTRICT ATTORNEY]: It's a single party check, Your Honor.

[ROMANOSKI'S COUNSEL]: Single party. [ASSISTANT DISTRICT ATTORNEY]: It's her money.

[ROMANOSKI'S COUNSEL]: Well, it was approved by a very experienced ADA.

[ASSISTANT DISTRICT ATTORNEY]: And later rescinded that.

THE COURT: I think this lady defrauded this man.

What's your Order say?

[ROMANOSKI'S COUNSEL]: Gives us the opportunity to move forward on a private criminal complaint.

THE COURT: Let's do it.

[ASSISTANT DISTRICT ATTORNEY]: Your Honor, we have to object. The standard [of] review in this matter is abuse of discretion.

**2.** Because this reason was never communicated to the trial court, we need not consider it

further.

THE COURT: I think you abused your discretion.

[ASSISTANT DISTRICT ATTORNEY]: Well, they have to show there's been bad faith [or][un]constitutionality.

THE COURT: I think it's there.

Thank you.

[ASSISTANT DISTRICT ATTORNEY]: The Superior Court case, Your Honor, basically says that when a determination has been made by the District Attorney's Office that the victim has adequate remedies available to them, that's more than a sufficient policy reason to refuse to prosecute a private criminal complaint.

THE COURT: I understand. The Commonwealth will proceed with the prosecution. It's ridiculous what happened in this case. Every time [Romanoski] did something wrong, you prosecuted him, he moved sideways, you prosecuted him.

He got defrauded, this lady actually defrauded him. It was improper what she did. She actually sent false information back to the insurance company to get this check in her name when it shouldn't have been done.

[ASSISTANT DISTRICT ATTORNEY]: Your Honor, they had a contract, and that means she breached the contract.

THE COURT: She violated the law.

[ASSISTANT DISTRICT ATTORNEY]: We'd have to show—

THE COURT: She violated the law.

[ASSISTANT DISTRICT ATTORNEY]: We'd have to show that when she entered into that contract, there was an intent.

THE COURT: Proceed with your criminal case.

[ASSISTANT DISTRICT ATTORNEY]: Can we appoint [Romanoski's counsel] as the Commonwealth's Attorney and he would assume all responsibilities? There's a rule of criminal procedure that would allow him—

THE COURT: You can actually prosecute this[?]

[ROMANSKI'S COUNSEL]: Absolutely. I was ready to do that from day one.

THE COURT: Sure you can. See how easy that was. Thank you.

[ROMANSKI'S COUNSEL]: Thank you, Your Honor.

N.T., 7/2/07, at 2–4. That same day, the trial court entered an order granting Romanoski's petition for reversal of the district attorney's decision to withdraw the charges previously filed against Michaliga. This timely appeal followed. Both the Commonwealth and the trial court have complied with Pa.R.A.P.1925.

¶ 7 The Commonwealth raises the following issues on appeal:

1. Whether the District Attorney of Luzerne County was justified in withholding the prosecution of [Romanoski's] private criminal complaint?

2. Whether the lower court abused its discretion and/or committed an error of law when it elected to sign an Order, mandating the Luzerne County District Attorney's Office to prosecute a private criminal complaint, after charges in the matter had been withdrawn for sound policy-based reasons?

3. Whether the lower court violated the Separation of Powers Doctrine by ordering the Luzerne County District Attorney's Office to reinstate criminal charges when there had been no adequate showing that the district attorney's office had abused its discretion?

4. Whether an affiant who is not a law enforcement officer is entitled to petition the court of common pleas, pursuant to Pa.R.Crim.P. 506(B)(2), for a review of the district attorney's decision to withdraw charges in a private criminal complaint matter, if his private criminal complaint was initially approved?

Commonwealth's Brief at 5.

¶ 8 Because the Commonwealth's first three issues concern the appropriateness of the trial court's order directing the district attorney's office to reinstate charges against Michaliga, we will address them together. Rule 506 of the Pennsylvania Rules of Criminal Procedure provides as follows:

**Rule 506. Approval of Private Complaints**

(A) When the affiant is not a law enforcement officer, the complaint shall be submitted to an attorney for the Commonwealth, who shall approve or disapprove it without reasonable delay.

(B) If the attorney for the Commonwealth:

(1) approves the complaint, the attorney shall indicate this decision on the complaint form and transmit it to the issuing authority.

(2) disapproves the complaint, the attorney shall state the reasons on the complaint form and return it to the affiant. Thereafter, the affiant may petition the court of common pleas for review of the decision.

Pa.R.Crim.P. 506.

¶ 9 At the hearing on Romanoski's petition to reverse the Commonwealth's withdrawal of charges against Michaliga, the Commonwealth informed the court that the charges ultimately were withdrawn because Romanoski's complaint was civil in nature and he could sue for damages under a breach of contract theory. Such a statement constitutes a policy-based reason for disapproval of charges.[3] *See e.g., Commonwealth v. Cooper,* 710 A.2d 76, 81 (Pa.Super.1998) (citation omitted) (stating district attorney's assertion that the complainant had an adequate civil remedy "sufficiently sets forth a clear statement as to the particular policy that dictates withholding prosecution."); *Hearn v. Myers,* 699 A.2d 1265, 1268 (Pa.Super.1997) (citation omitted) (upholding trial court's determination that district attorney's policy disapproving charges where an adequate civil remedy existed was appropriate; "[i]f a private prosecutor feels individually harmed his remedy is a civil suit for damages.")

¶ 10 This Court will review the trial court's consideration of the Commonwealth's policy-based reason as follows:

[W]hen the district attorney disapproves a private criminal complaint on wholly policy considerations, or on a hybrid of legal and policy considerations, the trial court's standard of review of the district attorney's decision is abuse of discretion. This deferential standard recognizes the limitations on judicial power to interfere with the district attorney's discretion in these kinds of decisions.... Thereafter, the appellate court will review the trial court's decision for an abuse of discretion, in keeping with settled principles of appellate review of discretionary matters.... The district attorney's decision not to prosecute a criminal complaint for reasons including policy matters carries

---

**3.** Had the Commonwealth disapproved the private complaint due to an insufficiency of evidence the trial court would review the matter *de novo. Cooper,* 710 A.2d at 80 (Pa.Super.1998) (citation omitted).

a presumption of good faith and soundness.... The complainant must create a record that demonstrates the contrary. Thus, the appropriate scope of review in policy-declination cases is limited to whether the trial court misapprehended or misinterpreted the district attorney's decision and/or, without a legitimate basis in the record, substituted its judgment for that of the district attorney. We will not disturb the trial court's decision unless the record contains no reasonable grounds for the court's decision, or the court relied on rules of law that were palpably wrong or inapplicable. Otherwise, the trial court's decision must stand, even if the appellate court would be inclined to decide the case differently.

*Commonwealth v. Heckman*, 928 A.2d 1077, 1079 (Pa.Super.2007) (quoting In re Wilson, 879 A.2d 199, 215 (Pa.Super.2005)) (en banc) (internal citations omitted). As this Court further stated in *Wilson:*

> The private criminal complainant has the burden to prove the district attorney abused his discretion, and that burden is a heavy one. In the Rule 506 petition for review, the private criminal complainant must demonstrate the district attorney's decision amounted to bad faith, fraud or unconstitutionality. The complainant must do more than merely assert the district attorney's decision is flawed in these regards. The complainant must show the facts of the case lead only to the conclusion that the district attorney's decision was patently discriminatory, arbitrary or pretextual, and therefore not in the public interest. In the absence of such evidence, the trial court cannot presume to supervise the

district attorney's exercise of prosecutorial discretion, and should leave the district attorney's decision undisturbed.

*Wilson,* 879 A.2d at 215.

■ ¶ 11 Our review of Romanoski's petition for review reveals no allegations of bad faith, fraud or unconstitutionality on the part of the district attorney's office.[4] Nevertheless, the trial court seized upon our Supreme Court's disagreement over the meaning of "bad faith" in the context of disapproving criminal complaints in *Commonwealth v. Brown,* 550 Pa. 580, 708 A.2d 81 (1998) and concluded as follows:

> So why was the Supreme Court unable to speak with one voice? The irresolvable point of contention centered on the meaning of "bad faith." This poses a particular problem for this court since in a moment it will be walking down that upsetting and ambiguous path.

> \* \* \*

> [T]he court now returns to the Supreme Court's opinions in *Brown,* and begins a search for the meaning of "bad faith" as it applies to the instant case. After examining the separate interpretations provided by Justice Nigro (writing in support of affirmance) and Justice Cappy (writing in support of reversal), this court finds Justice Nigro's definition persuasive. Justice Nigro states:

> > "The term 'bad faith' has been defined as 'not simply bad judgment or negligence, but rather it implies *the conscious doing of a wrong because of … moral obliquity….*'" Black's Law Dictionary 139 (6th ed.1990). 'Obliquity' involves a *'deviation from moral rectitude or sound thinking.'*

---

4. In his brief, Romanoski suggests that the case be remanded "to provide the Commonwealth an opportunity to present the explanation" for withdrawing the charges. Romano-

ski's Brief at 19. As noted above, however, Romanoski had the burden of demonstrating bad faith, fraud or unconstitutionality in his petition for review. *Wilson, supra.*

Merriam–Webster's Collegiate Dictionary 802 (10th ed.1996).

[*Brown*, 708 A.2d] at 85. Justice Cappy criticized this definition as "focus[ing] on the most obscure part of the definition provided [in ***Black's Law Dictionary*** ]" and as not providing the legal community sufficient guidance. However, this court cannot agree with the definition provided by the learned Justice Cappy: "bad faith is shown where the action under review was undertaken with a dishonest or corrupt purpose." [*Brown*, 708 A.2d] at 87 (emphasis added). Justice Cappy argues that using this definition, taken from the court's decision in *Thunberg v. Strause*, [545 Pa. 607], 682 A.2d 295 (1996), maintains "consistency in its application [. . .] in all areas of the law." While this court understands the desire for consistency, it believes that preserving necessary checks and balances between the judiciary and executive to be paramount.

This court does agree with Justice Cappy that this issue must be handled "with deference towards maintaining the delicate balance of power [between the judiciary and the executive]." [*Brown*, 708 A.2d] at 86. However, his definition would provide a judge *no* opportunity to check a District Attorney's exercise of power under the present facts; namely, a decision not to prosecute because of available civil remedies. There *are* civil remedies available in this and like cases, there are *always* civil remedies available, but Justice Cappy would deny this court the needed latitude to determine their *adequacy*.

Take for example an aggravated assault. The District Attorney could deny prosecution claiming a civil action for battery would be an "adequate" civil remedy. Then on appeal, how could a Petitioner prove that the District Attorney denied [the complaint] out of "a dishonest or corrupt purpose"? Under Justice Cappy's definition, how could a court possibly find an abuse of discretion when it must first find corruption and dishonesty? Under facts similar to this case, he would provide the judiciary no checks or balances on the District Attorney's use of discretion.

Under Justice Nigro's use of "moral obliquity", however, the court could ask whether the decision reflected sound thinking or was morally decent. Justice Nigro would allow the court to ask that question, and determine if the decision "comports with both law and justice," as required by the Superior Court's decision in [*Commonwealth v. Brown*, 447 Pa.Super. 454, 669 A.2d 984, 990 (1995) *(en banc), affirmed by equally divided court*, 550 Pa. 580, 708 A.2d 81 (1998),] as well as providing this court the ability to check the District Attorney's otherwise unlimited discretion. Using the standard illustrated by Justice Nigro, the court will now apply it.

The District Attorney does not allege that any previously unknown facts recently came to his attention, or that the circumstances surrounding the case changed in any way. An experienced ADA approved the complaint who found no policy concerns at that time. This court cannot imagine a single *good reason* why the District Attorney would suddenly withdraw these charges *three months* after an experience[d] ADA approved them.

Furthermore, [Romanoski] has established a *prima facie* case against [Michaliga], and civil remedies are inadequate in light of the alleged crimes. [*Commonwealth v. McGinley*, 673 A.2d 343, 347 (1996) *(en banc); Hearn v. Myers*, 699 A.2d 1265, 1268 (Pa.Super.1997) ]. It must also be noted that Romanoski's attorney agreed to prose-

cute the case on behalf of the Commonwealth and would have done so at no expense or inconvenience to the [Commonwealth.] According to the allegations, [Michaliga] intentionally sent false information back to the insurance company to get the check in her name. She went beyond a simple contract violation and actually defrauded [Romanoski] as well as the insurance company. With the money she obtained through her flagrant criminal conduct, she allegedly refused to pay on her debt and used this polluted money for her own selfish squanderings. She undermined the faith the people of the Commonwealth have placed in others to carry out honest transactions.

The general public requires criminal penalties for those who abuse a system to which we all trust our livelihoods, and if the allegations against [Michaliga] prove true, she must be punished for her misdeeds. The District Attorney abused his discretion. He consciously and improperly failed to use sound thinking and deviated from moral rectitude. *Brown,* [708 A.2d] at 85. He failed in his obligation to protect the people and acted in bad faith, and it is within this court's sound discretion to so find.

Trial Court Opinion, 8/17/07, at 4–7 (footnote omitted).[5] Thus, the court granted Romanoski's petition and ordered the district attorney's office to reinstate the charges against Michaliga.

 ¶ 12 Initially, the fact that the district attorney's office reconsidered its original approval of Romanoski's private criminal complaint cannot be viewed, in and of itself, as an indication of bad faith. As this Court stated in *In re Petition of Piscanio,* 235 Pa.Super. 490, 344 A.2d 658, 659

(1975), the district attorney is "empowered to withdraw his initial approval when such action is indicated by the circumstances." In fact, "the district attorney has the duty to avoid prosecution by withdrawing prior approval given a private criminal complaint when that office is satisfied that such a course will advance the interests of justice." *Piscanio,* 344 A.2d at 661. The record in this case does not support the inference of any intent on the district attorney's part other than the fact that, upon further discussion among the members of his office, the district attorney ultimately decided to withdraw the charges. As noted in *Wilson,* it was Romanoski's burden to demonstrate that the district attorney's office disapproval was based upon bad faith, fraud or unconstitutionality. He made no such allegations in his petition for review.

¶ 13 Moreover, since our Supreme Court's decisions in *Brown, supra,* no appellate court has discussed or resolved the differing definitions given the term "bad faith" as it applies in the context of reviewing a district attorney's policy-based disapproval of a private criminal complaint. Unlike the trial court in this case, however, we find the definition put forth by Justice Cappy in *Brown* to be more persuasive then the definition used by Justice Nigro. Justice Cappy's definition of bad faith objectively focuses upon the intent of the prosecutor. Conversely, Justice Nigro's definition, based in part upon "moral rectitude," is unworkable because it introduces a trial court's own personal beliefs into its determination and, therefore, renders appellate review impossible. In essence, using Justice Nigro's definition of bad faith permits the trial court to substitute its judgment for that of the district attorney's

5. Contrary to the trial court's implication, this court did not find the civil remedy available

in either *McGinley, supra* or *Hearn, supra* to be inadequate.

office. This it cannot do. *Wilson,* 879 A.2d at 215 (explaining that a trial court abuses its discretion when, "without a legitimate basis in the record," it "substitute[s] its own judgment for that of the district attorney.")

¶ 14 As noted above, it is presumed that the district attorney acted in good faith, *Heckman, supra,* and the fact that Romanoski has a civil remedy for Michaliga's alleged breach of her contract with him clearly is based upon "sound thinking," given the state of the law in Pennsylvania. *See generally, Cooper, supra; Hearn, supra.* Therefore, the trial court's conclusion that the district attorney "consciously and improperly failed to use sound thinking and deviated from moral rectitude," Trial Court Opinion, 7/2/07, at 7, is without support in the record or the law. Thus, we hold the trial court abused its discretion when it ordered the district attorney's office to reinstate the charges against Michaliga.

¶ 15 Finally, the trial court's abuse of discretion in this case is reinforced by its reliance upon facts that are not of record. Initially, while the trial court at the hearing on Romanoski's petition accused the district attorney's office of prosecuting Romanoski "[e]very time [he] did something wrong," N.T., 7/2/07, at 3, there is nothing in the record to support this assertion and, at any rate, it is irrelevant to the complaint Romanoski filed against Michaliga. Further, upon reviewing the terms of the contract between Michaliga and Romanoski, there is no indication of the source from which Romanoski would be paid, *i.e.,* the contract does not specify that any specific monies from the insurance payment were required to be distributed to Romanoski as compensation for work performed at the salon. More importantly, Romanoski has never alleged that Michaliga originally received a two-party check, returned it, and

asked the Hartford to issue a single-party check to her. The record also is devoid of any indication as to how Michaliga used the money she allegedly received from Hartford. As the absence of these facts from the record further demonstrates the inappropriateness of filing criminal charges in this case, we reverse the order of the trial court which directs the reinstatement of criminal charges against Michaliga.

¶ 16 Although we grant the Commonwealth relief based upon its first three claims, we also note that its fourth claim, that Romanoski cannot seek review because the district attorney's office originally approved his complaint, is without merit. *See Piscanio, supra,* (reviewing disapproval of complaint that had been originally approved).

¶ 17 Order reversed. Jurisdiction relinquished.