2021 PA Super 28

| | |
|---|---|
| IN RE: PRIVATE COMPLAINT FILED BY LUAY AJAJ | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL BY: COMMONWEALTH OF PENNSYLVANIA | No. 3421 EDA 2019 |

Appeal from the Order Entered October 31, 2019
In the Court of Common Pleas of Montgomery County
Criminal Division at Nos: CP-46-MD-0001539-2019,
CP-46-MD-0001539-2019

BEFORE: STABILE, J., NICHOLS, J., and COLINS, J.[*]

OPINION BY STABILE, J.: Filed: February 25, 2021

The Commonwealth appeals from the October 31, 2019 order entered in the Court of Common Pleas of Montgomery County overturning the Commonwealth's disapproval of a private complaint filed by Luay Ajaj ("Ajaj"). Ajaj filed the private complaint seeking charges against his wife ("Mother") for violations of 18 Pa.C.S.A. § 2904(a) (interference with custody of children) and § 2909(a) (concealment of whereabouts of a child). The Commonwealth disapproved the complaint, initially citing "evidentiary issues." However, at the time of the hearing on the matter, the Commonwealth argued "policy

_____

[*] Retired Senior Judge assigned to the Superior Court.

considerations." The Commonwealth asserts the trial court abused its discretion by overturning the disapproval. Following review, we affirm.

While the underlying facts themselves are somewhat complicated, they are further complicated by the state of world affairs. Essentially, after the court awarded Ajaj custody of his two children, he filed a private complaint charging Mother with interfering with their custody and concealing their whereabouts "by hiding them away in the war-torn country of Iraq contrary to orders of this court conferring sole legal and physical custody of the children on Ajaj, issuing bench warrants for [Mother], and directing all agencies of law enforcement to cooperate in securing the children's return." Trial Court Opinion 5/8/20, at 1 (some capitalization omitted).

The trial court provided the following factual and procedural background:

> Ajaj instituted this action in this court on June 26, 2019, by petition under [Pa.R.Crim.P.] 506(B)(2), for review of the District Attorney's disapproval of Ajaj's private criminal complaint. The petition, however, was not the beginning of Ajaj's struggle to attain the return of his purloined children, but the last straw in a long and tortuous process . . . to bring them home from one of the most perilous countries on Earth. . . .

> The current saga began in August 2017, when the mother of the two children, then approximately one and four years old, left with them and [Ajaj] from the home in West Norriton, Pennsylvania, where the family, all United States citizens, had lived since the children's birth, on a trip to Iraq. While there, she and her uncles took the children away to an undisclosed location. Ajaj has been on an unfailing quest to get them back ever since.

> Following the trail of the somewhat disjointed *pro se* narrative and exhibits of the private criminal complaint attached to Ajaj's

- 2 -

petition . . . , this lower court pieces together that to get his children back Ajaj first consulted with American authorities in Iraq, where his life was being threatened by the mother's powerful uncles and other third parties. Ajaj had a meeting with the office of American Citizen Services of the United States Embassy in Baghdad, Iraq (where he believed the mother still to be with the children) on September 12, 2017.

Unsuccessful there, he returned home, retained counsel, and broadened his outreach stateside to the United States Department of State's passport center, Diplomatic Security Service, and Office of Children's Issues, later repeating his foray to the U.S. Embassy in Baghdad in August 2018. Based on these contacts and meetings, on September 17, 2018, the Office of Children's Issues opened a case file and, through Soren Andersen, "the Country Officer in the Office of Children's Issues responsible for outgoing cases of international parental child abduction to Iraq," wrote Ajaj a letter listing resources to help him in resolving the crisis.

*Id.* at 2-3 (citations to exhibits and some capitalization omitted).

The letter from Sorensen to Ajaj outlined options available to Ajaj, including filing for custody in the United States and seeking recognition of a custody order in Iraq; filing for custody in Iraq; or consulting with law enforcement authorities about potential criminal remedies, noting his office "can assist you with communicating with law enforcement, should you decide to pursue criminal warrants against your children's mother." *Id.* at 3 (quoting Sorensen's September 17, 2018 letter to Ajaj). Sorensen also recommended filing a missing persons report as a first step to any of the available options as a means of documenting the children's retention by Mother. *Id.*

While seeking advice from various agencies and entities, on September 27, 2018, Ajaj also filed an emergent petition for custody of the children in the Family Division of the Montgomery County Court. On October 1, 2018,

- 3 -

that court entered an order deeming the matter an emergency and granting sole legal and physical custody to Ajaj pending a full hearing upon the children's return. The court scheduled additional proceedings, at which Mother did not appear, and ultimately issued a bench warrant for Mother's arrest and affirmed the award of sole legal and physical custody to Ajaj.

The trial court summarized various legal proceedings and developments that occurred between September 2018 and May 2019, *id.* at 5-13, including the issuance of an order in the domestic proceedings that directed Montgomery County law enforcement agencies to cooperate in the capture of Mother and the return of the minor children. *Id.* at 13 (citing order dated 5/31/19 and entered 6/3/19).

On May 31, 2019, Ajaj filed his private criminal complaint with exhibits, seeking to charge Mother with the offenses noted above, *i.e.*, interference with custody of children and concealing the whereabouts of children. As this Court reiterated in *In re Hamelly*, 200 A.3d 97 (Pa. Super. 2018), "A private complaint must at the outset set forth a *prima facie* case of criminal conduct." *Id.* at 101 (quoting *In re Ullman*, 995 A.2d 1297, 1213 (Pa. Super. 2010)). "The district attorney must investigate the allegations of a properly drafted complaint to permit a proper decision on whether to approve or disapprove the complaint." *Id.* (citing *Ullman*, 995 A.2d at 1213).

On June 19, 2019, the District Attorney's Office issued its disapproval of the complaint, citing "evidentiary issues."[1] Because the disapproval was based on evidentiary issues, on June 26, 2019. Ajaj filed a petition for *de novo* review of the disapproval. The court scheduled a July 23, 2019 hearing on the petition.[2]

On the day of the hearing, the District Attorney's Office (hereinafter referred to as "the Commonwealth") filed an answer to the petition in which it asserted for the first time that the complaint was properly disapproved, not only for evidentiary issues, but also for policy considerations. The Commonwealth then argued policy considerations at the hearing.[3] Those

---

[1] The private Criminal Complaint at issue is a two-page form complaint to which Ajaj appended documentation in support of his claims. At the bottom of the second page, the District Attorney checks a box indicating the complaint is either approved or disapproved. In the event of disapproval, the reason is to be identified. In the instant case, the form reflects that the complaint was "disapproved because 'evidentiary issues.'" **See** Private Criminal Complaint at 2.

[2] As will be discussed *infra*, when a private criminal complaint is disapproved for legal reasons, such as "evidentiary issues," the trial court's review of that disapproval is *de novo*. However, when a complaint is disapproved for policy reasons, or a combination of policy and legal reasons, the trial court reviews the disapproval for abuse of discretion. **In re Miles**, 170 A.3d 530, 534-35 (Pa. Super. 2017). **See also In re Wilson**, 879 A.2d 199, 214-15 (Pa. Super. 2005) (*en banc*).

[3] While we expect that the court and Ajaj's counsel had the benefit of the Commonwealth's answer at the time of the hearing, we note that the transcript reflects the hearing began at 10:45 a.m. on July 23, 2019 and concluded at 11:10 a.m., while the Commonwealth's answer was not filed with the Clerk of Courts until 12:09 p.m. that day.

policy considerations included the Commonwealth's policy of not approving private complaints alleging a felony, the Commonwealth's use of caution in criminalizing actions of parents involved in custody disputes, and the availability of alternative civil as well as federal remedies. ***See*** Commonwealth's Response to Motion Seeking Review and Approval of Private Criminal Complaint ("Commonwealth's Response to Motion"), 7/23/19, at ¶ 1(a)-(c); ***see also*** Notes of Testimony, 7/23/19, at 9-15.[4]

The trial court took the matter under advisement and issued an order granting Ajaj's petition and reversing the disapproval of his private complaint. Trial Court Order, 10/31/19. This timely appeal followed. Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth asks this Court to consider one issue:

1. Did the lower court err and abuse its discretion by overturning the Commonwealth's disapproval of a private criminal complaint, where the Commonwealth acted in good faith and the private criminal complainant did not meet his burden to show that the Commonwealth's disapproval was an abuse of discretion?

Appellant's Brief at 5.

---

[4] The Commonwealth's Response to Motion also outlined two evidentiary issues, *i.e.*, insufficient probable cause to establish that Mother, rather than her uncles, committed a crime, and the lack of resources to investigate the merits of the complaint. Commonwealth's Response to Motion, 7/23/19, at ¶ 1(d)-(e).

We begin by setting forth the applicable standard of our review. As this Court explained in *In re Miles*, 170 A.3d 530 (Pa. Super. 2017), the trial court undertakes a *de novo* review when a district attorney disapproves a private criminal complaint solely on the basis of legal conclusions. *Id.* at 534. "Thereafter, the appellate court will review the trial court's decision for an error of law. As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." *Id.* (citations omitted). By contrast, when reviewing a disapproval that is based "on wholly policy considerations, or on a hybrid of legal and policy considerations, the trial court's standard of review of the district attorney's decision is abuse of discretion." *Id.* at 535. In that instance, "the appellate court will review the trial court's decision for an abuse of discretion, in keeping with settled principles of appellate review of discretionary matters." *Wilson*, 879 A.2d at 215 (citations omitted). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." *Id.* (citations omitted). *See also Commonwealth v. Brown* ("*Brown II*"), 708 A.2d 81, 84 (Pa. 1998) ("a trial court should not interfere with a prosecutor's policy-based decision to disapprove a private complaint absent a showing of bad faith, fraud, or unconstitutionality").

Here, the trial court recognized the competing standards of review to be employed by the trial court, depending on whether the disapproval was based

on legal reasons or on policy reasons (or a hybrid of both). Recognizing that the Commonwealth waited until the day of the hearing to raise policy considerations—more than a month after disapproving the complaint for evidentiary reasons, the court remarked:

> For the Commonwealth thus to have changed its tune at the last minute put Ajaj at a disadvantage by leading him to believe he would be entitled to de novo review of the Commonwealth's decision, and to come to the hearing prepared to testify to rebut any evidentiary concerns, only to find that the Commonwealth was now bringing in unanticipated issues of policy not only to heighten the standard of the court's review to one of abuse of prosecutorial discretion, but to deny the relevance of an evidentiary hearing altogether.

Trial Court Opinion, 5/11/20, at 20. The court suggested that the prosecution's failure to raise any policy considerations prior to the date of Ajaj's hearing "casts doubt on their genuineness." *Id.* at 21. "However, whether the Commonwealth's not raising 'policy issues' in initially disapproving the complaint . . . waived any such issues for purposes of appeal is for the honorable Superior Court to determine." *Id.*

The court then conducted a *de novo* review of the evidentiary issues raised by the prosecution in the Commonwealth's Response to Motion and its Rule 1925(b) statement. As framed in the Commonwealth's Rule 1925(b) statement, there were

> evidentiary concerns because the conduct outlined in the complaint focuses on the conduct of the mother's uncles and does not provide sufficient evidence of mother's knowledge and intent, and evidentiary concerns because there is no evidence to overcome affirmative defenses that the mother was taking action necessary to preserve the child from danger or that she was not

- 8 -

fleeing domestic violence or child abuse, or that mother had no legal privilege to custody of the children especially because there are currently custody proceedings going on in Iraq; and [] investigative and evidentiary concerns because, with the exception of [] Ajaj, all possible witnesses, court documents, and other information is in Iraq, and local law enforcement does not have the resources to conduct a thorough investigation to resolve the above concerns.

Rule 1925(b) Statement at ¶ 1(2)-(3).

The trial court dismissed the Commonwealth's "evidentiary issues" relating to custody, noting that Ajaj was the best source of evidence concerning Mother's conduct. As for Mother's actions in possibly preserving the children from danger or fleeing domestic or child abuse, any such issues could have been raised before the court in the custody proceedings. Despite Mother's assurances she would return to Montgomery County with the children, she never did so. Ultimately, the judge handling the custody proceedings not only awarded sole legal and physical custody to Ajaj—grounding her ruling firmly in the "best interests of the children"—but also issued bench warrants for Mother and directed law enforcement to cooperate in securing the children's return. *See* Trial Court Opinion, 5/8/20, at 21-24. Having reviewed the evidentiary concerns relating to custody, the trial court concluded that Ajaj's complaint made out a *prima facie* case that Mother concealed the whereabouts of the children in violation of 18 Pa.C.S.A. § 2909(a). The trial court's analysis and conclusion apply equally to a finding that the complaint made out a *prima facie* case of interference with the custody of the children in violation of 18 Pa.C.S.A. § 2904(a). "For the

- 9 -

Commonwealth to put forward the possibility of evidence of abuse as grounds for refusing prosecution in these circumstances is an affront to the court that found no such credible evidence after counselled proceedings at which [Mother] had several opportunities, indeed was compelled by the court, to appear and testify." *Id.* at 24-25 (some capitalization omitted).

With respect to witnesses and documents being in Iraq, the trial court similarly dismissed those concerns. The court noted that Mother failed to comply with the directive in the custody proceedings to provide documents relating to any parallel proceedings in Iraq. Further, the court rejected the Commonwealth's contention that it lacked resources to investigate evidentiary matters, noting that federal authorities

> were "blinking red" with signals to the [Commonwealth] to file charges and have a warrant issued so that the federal government would have the requisite basis upon which to pursue the matter and assist the [Commonwealth] with the only means possible of securing capture of [Mother] and, hopefully by extension, rescue the children.

*Id.* at 26. The court noted the Commonwealth's awareness of the FBI and State Department's indications to Ajaj that "he would have little chance of getting their best efforts to secure the capture of the mother and the return of the children" if charges were not filed and a warrant issued. *Id.*

Based on its *de novo* review of the disapproval based on evidentiary issues, the trial court found the Commonwealth's claims lacked merit. Having undertaken a plenary review of that decision, we find no error of law in the trial court's ruling. Therefore, we shall not disturb it.

- 10 -

As reflected above, the Commonwealth first raised policy considerations at the time of the July 23, 2019 hearing on the disapproval, after listing only "evidentiary issues" as the basis for its disapproval on the complaint form on June 19, 2019. The trial court declined to find waiver, leaving that decision to this Court, and proceeded to review and reject the Commonwealth's policy claims under an abuse of discretion standard. While we might be inclined to find the Commonwealth limited its basis for disapproval when it noted only evidentiary issues in its disapproval, our review of the trial court's disposition under an abuse of discretion standard would not yield a different result.

As this Court explained in **Commonwealth v. Brown** ("**Brown I**"), 669 A.2d 984 (Pa. Super. 1995) (*en banc*), *aff'd by an equally divided court*, **Brown II**, 708 A.2d 81 (Pa. 1998):

> When an appeal is brought from a common pleas court's decision regarding the approval or disapproval of a private criminal complaint, an appellate court is limited to ascertaining the propriety of the *trial court's* actions. Thus, our review is limited to determining whether the trial court abused its discretion or committed an error of law.

**Brown I** at 990 (emphasis in original).

In its Rule 1925(a) opinion, the trial court addressed each of the policy considerations asserted in the Commonwealth's Response to Motion. First, it considered the Commonwealth's contention that it did not approve private complaints alleging a felony. After suggesting that such a policy could have been easily stated when it first disapproved the complaint, the court noted that the Commonwealth did not present any evidence of such guidance to its

prosecuting attorneys. Trial Court Opinion, 5/8/20, at 27. Moreover, such a policy struck the court "as an especially bad one. It wipes from the books for consideration in the private-complaint setting the most serious of classic crimes spelled out in the Crimes Code," including third-degree murder, kidnapping, forcible rape, and the crimes charged in the instant case: interference with custody of children and concealment of the whereabouts of a child. *Id.*

The trial court next considered the policy assertion that caution should be exercised in criminalizing actions of estranged parents involved in a custody dispute. While acknowledging such a policy might be laudable when one parent is attempting to tilt the playing field in what should be strictly a domestic-relations rather than criminal case, "that is not what happened here." *Id.* at 28. Instead, despite the best efforts of the judge in the custody case to apply civil remedies, the judge nevertheless was compelled to call upon law enforcement agencies to cooperate in Mother's capture and the return of the minor children. *Id.* The extraordinary circumstances of this case "should not be overcome by the [Commonwealth's] ordinary reluctance to intervene in civil suits." *Id.* at 29.

The court next considered the Commonwealth's argument that civil remedies were available to Ajaj. While recognizing that the existence of civil remedies can serve as a legitimate policy reason for disapproving a complaint, "here that policy reason does not apply." *Id.* (citing, *inter alia*,

***Commonwealth v. Cooper***, 710 A.2d 76, 81 (Pa. Super. 1998)). As the court explained:

> Essentially this court through its orders was acknowledging that the civil remedies Ajaj had pursued to the hilt and been granted would still be inadequate, and that [Mother's] criminal actions in defiance of the court's orders required the intervention of all the organs of criminal law enforcement to have any force and effect.

***Id.*** (some capitalization omitted).[5]

In ***Brown I***, the trial court rejected the policy considerations asserted by the Commonwealth as its basis for disapproving the private criminal complaint, noting the Commonwealth's "vague claim of 'policy' [was] unsupported by reference to a specific policy that requires the disapproval of this private complaint." ***Id.*** at 992. This Court concluded that the trial court did not abuse its "narrowly limited discretion" when it found the Commonwealth "failed to advance sufficient policy reasons in support of the disapproval of the private criminal complaint." ***Id.*** Similarly, in the present case, while the Commonwealth offered three "policy considerations" for disapproving Ajaj's complaint, the trial court found the Commonwealth failed to advance sufficient policy reasons for any of the three "policies." In ***Brown II,*** an equally divided Supreme Court affirmed this Court's *en banc* decision, which affirmed the trial court's reversal of the Commonwealth's disapproval of the private complaint, noting:

---

[5] Although the Commonwealth did not mention the availability of civil remedies in its Rule 1925(b) statement, the trial court elected to address it because it was raised in the Commonwealth's Response to Motion.

- 13 -

> In sum, we are unable to conclude that the Attorney General's decision not to prosecute . . . was in furtherance of any valid policy of this Commonwealth. While the discretionary decisions of a prosecutor must be given due deference, it is clear that the Attorney General's position in this case represents a "deviation from moral rectitude [and] sound thinking," and is simply not tenable. Thus, we are compelled to conclude that the Attorney General acted in bad faith in disapproving [the] complaint.

*Brown II*, 708 A.2d at 86.[6]

In the instant case, not only did the Commonwealth raise policy considerations in an untimely manner, but also it raised policy considerations that deviate from moral rectitude and sound thinking under the facts as developed in the custody proceedings and as summarized in Ajaj's complaint and exhibits. Therefore, we find the trial court did not abuse its discretion when it found the Commonwealth failed to advance sufficient policy reasons to support disapproval of the complaint. As explained above, we also find that the trial court did not commit error of law in rejecting the Commonwealth's disapproval based on evidentiary issues. Therefore, we affirm the trial court's order directing the Commonwealth to accept and transmit the complaint for prosecution in accordance with Pa.R.Crim.P. 506(B)(1).

_____

[6] In *Brown II*, the Court noted:

> The term "bad faith" has been defined as "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of . . . moral obliquity . . .." Black's Law Dictionary 139 (6th ed.1990). "Obliquity" involves a "deviation from moral rectitude or sound thinking." Merriam–Webster's Collegiate Dictionary 802 (10th ed.1996).

*Brown II*, 708 A.2d at 85.

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/25/21