**[J-9-2022] [MO:Brobson, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| IN RE: PRIVATE COMPLAINT FILED BY LUAY AJAJ | : | No. 55 MAP 2021 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court at No. 3421 EDA |
| APPEAL OF:  COMMONWEALTH OF PENNSYLVANIA | : | 2019 dated February 25, 2021, |
| | : | Reconsideration Denied May 3, |
| | : | 2021, Affirming the Order of the |
| | : | Montgomery County Court of |
| | : | Common Pleas, Criminal Division, at |
| | : | No. CP-46-MD-0001539-2019 dated |
| | : | October 31, 2019 and Remanding. |
| | : | |
| | : | ARGUED:  March 9, 2022 |

## CONCURRING AND DISSENTING OPINION

**JUSTICE WECHT**                                    **DECIDED:  January 19, 2023**

This Court's two most recent voyages into the complex universe of Rule 506[1]
private criminal complaints—*Commonwealth v. Benz*, 565 A.2d 764 (Pa. 1989) and
*Commonwealth v. Brown*, 708 A.2d 81 (Pa. 1998) ("*Brown II*")—resulted in fractured
opinions, divergent reasoning, and an unwieldy standard.  In several respects, I join the
Majority's efforts to repair and reshape this corner of our jurisprudence.  For instance, I
too would eliminate the distinction between the disapproval of a private criminal complaint
for legal reasons (in which case trial courts would have engaged in *de novo* review) and
policy reasons (in which case trial courts would have engaged in abuse of discretion

---

[1]     Pa.R.Crim.P. 506.

review).[2]  Furthermore, I agree that *Benz* should be overruled insofar as it holds that a private complainant need merely establish a *prima facie* case in order for a court to compel prosecution.[3]

The Majority's "bad faith, fraud, or unconstitutionality" standard, though, goes much further, and threatens to render the private criminal complaint process a nullity.  I would instead adopt the familiar abuse of discretion standard.  This would preserve the core function of the private criminal complaint under Rule 506.

I disagree as well with the Majority's application of its own standard of review to the record before us.  I would affirm the substantive reasoning of the courts below, vacate the Superior Court's order, and remand this dispute for briefing on the looming separation of powers issue associated with providing a remedy in Rule 506 cases.

## I.

The Majority rightly retires the structure under which the asserted basis for a district attorney's disapproval of a private criminal complaint dictated the applicable standard of review.  The distinction between a decision based upon "legal conclusions" and one based upon "policy considerations" in this context is both opaque and malleable.  The competing opinions in *In re Wilson*, 879 A.2d 199 (Pa. Super. 2005) (*en banc*) are illustrative.  There, an *en banc* majority of the Superior Court endorsed the following analysis from a trial court that found no abuse of discretion:

> The District Attorney's first basis for disapproving the private criminal complaint—that the likelihood of conviction is minimal and/or the likelihood

---

[2]    *See* Maj. Op. at 24 (rejecting "the prior rubric, where the applicable standard of review depended on the asserted basis for the Commonwealth's disapproval of the private criminal complaint").

[3]    As discussed herein, the Majority overrules *Benz sub silentio*.  In an effort to bring clarity to this line of cases, I would do so unambiguously.

of acquittal is great—indicates a lack of prosecutorial merit. This is a policy determination. Likewise, the determination that the victim has adequate civil remedies available to him is a policy reason for refusing to prosecute the complaint.[4]

According to one of the dissents, though, the district attorney's conclusion "that the likelihood of conviction was minimal" did not implicate policy; rather, it "constituted a legal evaluation of the evidence . . . subject to appellate *de novo* review."[5]

The fact that the *Wilson* majority and dissent both reach wholly reasonable yet contradictory conclusions demonstrates the confusion that we alleviate today. The decision that a complaint lacks prosecutorial merit ordinarily will proceed from an assessment of the underlying legal questions. However, the way in which a prosecutor wields the Commonwealth's resources, prioritizes certain crimes over others, or directs complainants to alternate paths of relief all implicate the exercise of discretion. In the case *sub judice*, the prosecutor asserts that "the Montgomery County District Attorney's office does not approve complaints alleging a felony."[6] This appears to be a "policy," in the colloquial sense. But it is ultimately a legal determination that would sort some complaints into that category and others out of it, as the decisive question would be whether a private complainant has alleged facts that, if proven, would constitute a felony. Neither conclusion is outlandish; it is the purported distinction itself that invites conflation. Rather than tumble further down this rabbit hole, the Majority wisely directs trial courts to review disapprovals of private criminal complaints under a unitary standard, regardless of the prosecutor's reasoning.

---

[4]     879 A.2d at 217 (cleaned up) (citing *Commonwealth v. Metzker*, 658 A.2d 800, 801 (Pa. Super. 1995)).

[5]     *Id.* at 223 (Bowes, J., dissenting) (citing Benz, 565 A.2d at 764).

[6]     Tr. Ct. Op. at 16.

But the Majority goes much further. It proceeds to hold that "a court of common pleas may only overturn [a prosecutor's disapproval decision] if the private complainant demonstrates that the disapproval decision amounted to bad faith, occurred due to fraud, or was unconstitutional."[7] This standard, born from *Brown II*,[8] was intended to apply only to disapprovals based in policy. Therefore, if the bifurcation between legal reasons and policy reasons no longer exists, adopting it for all cases functions to devastate our decisions in *Benz* and *Brown II*, which I will now briefly review.

In *Benz*, an off-duty police officer's gun discharged during an altercation with Paaron Jones, resulting in the latter's death. Though the coroner recommended that the officer, Benz, be charged with voluntary manslaughter, the district attorney filed no charges. The prosecutor reasoned that the eye-witness testimony was too disjointed, and that forensic evidence supported the conclusion that the two men had wrestled over the weapon, resulting in accidental discharge. Jones' mother then filed a private criminal complaint under the progenitor to Rule 506, Rule 133. The district attorney disapproved the complaint, citing insufficient evidence.[9] The court of common pleas found no abuse of discretion, but the Superior Court reversed on the basis that there was indeed sufficient evidence to support a *prima facie* case against Benz.

This Court affirmed. The plurality found that the "evidence . . . unquestionably established a homicide," and that "the person responsible for the death of [Jones] was

---

[7]    Maj. Op. at 24.

[8]    *See* 708 A.2d at 84 (Opinion in Support of Affirmance) ("OISA"); *id.* at 86 (Opinion in Support of Reversal) ("OISR").

[9]    *See Benz*, 565 A.2d at 768 (Opinion Announcing the Judgment of the Court) ("OAJC") ("the decision to decline prosecution resulted from [the district attorney's] determination that the evidence would not sustain a *prima facie* case").

[Benz]."[10]  Whether that homicide was "justifiable or excusable" was a "matter of defense," which could be raised at trial, and did not negate the finding of a *prima facie* case.[11]  Had the district attorney "stated policy reasons to support the decision not to prosecute," the plurality readily admitted that it "would show the deference accorded to such a discretionary use of the executive powers conferred in that officer."[12]  But because the decision "not to prosecute was based upon a legal determination of the sufficiency of the evidence to establish a *prima facie* case," it was the "type of decision [that was] within the purview of the judicial system to review."[13]

Justice Larsen concurred in the result and wrote separately to express his "vehement disagreement with the [plurality's] interpretation and application of" Rule 133.[14]  Because the Rule "[did] not contemplate that criminal proceedings initiated by private complaint [would] be subject to the 'policy' and discretion of the district attorney," Justice Larsen opined, it "[did] not matter on what basis the prosecutor [made] his or her decision."[15]  Either way, the prosecutor's assessment of whether Jones' mother had established a *prima facie* case was "within the purview of the judicial system to review."[16]

---

[10]     *Id.* at 767.

[11]     *Id.* (citing *Commonwealth v. Capitolo*, 498 A.2d 806 (Pa. 1985)).

[12]     *Id.* n.4.

[13]     *Id.* at 768.

[14]     *Id.* (Larsen, J., concurring).

[15]     *Id.* at 769.

[16]     *Id.*  Justice Larsen noted that "until 1974, private criminal complaints were not subject to review by the district attorney," and "it was for the *courts*, through the office of an issuing authority, to determine . . . whether (1) the complaint was properly completed and executed; (2) the affiant was a responsible person; and (3) there was probable cause for the issuance of process."  *Id.* (emphasis in original).  The changes made in 1974, he argued, "merely concerned *who* was to approve the complaint in the first instance."  *Id.* (emphasis in original).

In *Brown II*, a trial court concluded that the Attorney General[17] committed a gross abuse of discretion in failing to bring charges of perjury, criminal conspiracy, false reporting, and evidence tampering. The Superior Court affirmed that result, finding that the Attorney General had produced "no evidence of a clearly defined policy that is consistently used to review the merits" of a private criminal complaint, and opined that "[a] prosecutor . . . cannot simply assert that it is against its policy to prosecute."[18] Rather, the prosecutor "must demonstrate that a clearly defined policy has been established that can be uniformly applied to such complaints."[19] The "vague claim of 'policy'" was insufficient.[20]

An evenly-divided Court in *Brown II* affirmed the holding of *Brown I*. While the OISA and the OISR differed as to the definition and application of bad faith, the Justices supporting reversal agreed that the Justices supporting affirmance had "[set] forth the correct standard of review," which "sufficiently safeguard[ed] the concept of separation of powers."[21] In a footnote, those Justices explicitly endorsed the rule that does not survive today's opinions: "[w]here the prosecutor's decision is based on a legal conclusion[,] this [C]ourt may exercise *de novo* review of the sufficiency of that legal conclusion."[22]

---

[17]  The complainant in *Brown II* had named the local district attorney as a co-conspirator, creating a conflict of interest for that office. *See Brown II*, 708 A.2d at 83.

[18]  *Commonwealth v. Brown*, 669 A.2d 984, 992 (Pa. Super. 1995) ("*Brown I*").

[19]  *Id.*

[20]  *Id.*

[21]  *Brown II*, 708 A.2d at 86 (OISR).

[22]  *Id.* at 86 n.1.

I find *Benz* to be poorly reasoned, and I would therefore discard its holding.[23] Compelling prosecution whenever a private criminal complainant makes out a *prima facie* case, without regard to the availability of affirmative defenses or the credibility of witnesses, sets the bar too low.[24] I discern no interest that would be served by prosecutors being forced to bring cases that they reasonably believe are likely to result in not-guilty verdicts in light of available defenses, such as accident, duress, or self-defense. Suppose that a burglar attacks a homeowner, and the homeowner successfully defends herself, killing the burglar. It would be ludicrous if a private complainant could compel a

---

[23] When confronted with a fragmented decision, where "no single rationale explaining the result enjoys the assent of [a majority of] Justices," this Court follows the approach taken in *Marks v. United States*, 430 U.S. 188, 193 (1977): "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds." *See Commonwealth v. Alexander*, 243 A.3d 177, 197 (Pa. 2020) ("We apply the *Marks* rule."). There are numerous examples of this Court applying the *Marks* rule. *See, e.g., Commonwealth v. McClelland*, 233 A.3d 717, 733 (Pa. 2020) (finding that, although *Commonwealth ex rel. Buchanan v. Verbonitz*, 581 A.2d 172 (1990) was "nominally a plurality decision, it [was] clear that a five-member majority of the Court" held that hearsay evidence alone is insufficient to establish a *prima facie* case at a preliminary hearing); *Commonwealth v. Yohe*, 79 A.3d 520, 553 (Pa. 2013) (finding that both "the lead opinion and [a] concurring opinion" in *Williams v. Illinois*, 567 U.S. 50 (2012) determined a report to be non-testimonial); *City of Phila. v. Clement & Muller, Inc.*, 715 A.2d 397, 398-9 (Pa. 1998) (finding precedential value in *Commonwealth v. Wilsbach Distributors, Inc.*, 519 A.2d 397 (Pa. 1986), where two Justices voted for the OAJC and two Justices concurred); *Commonwealth v. Haefner*, 373 A.2d 1094, 1095 (Pa. 1977) (discerning a holding from *Commonwealth v. Bolden*, 373 A.2d 90 (Pa. 1977), where one Justice joined the OAJC, a third Justice concurred in the result, and a fourth Justice filed a concurring opinion).

Though Justice Larsen objected to the notion that "criminal proceedings initiated by private complaint [would] be subject to the 'policy' and discretion of the district attorney," he agreed with the *Benz* plurality that courts could review a district attorney's disapproval of a private criminal complaint on legal grounds for errors of law. *See* 565 A.2d at 769 (Larsen, J., concurring). In *Benz*, then, four Justices agreed that because Jones' mother had established a *prima facie* case of voluntary manslaughter, the trial court could compel the district attorney to commence prosecution.

[24] *See Commonwealth v. Dantzler*, 135 A.3d 1109, 1114 (Pa. Super. 2016) (recognizing that "a *prima facie* case is a low threshold of proof").

prosecutor to bring criminal homicide charges against the homeowner, notwithstanding the prosecutor's reasonable determination that the homeowner was entitled to protect herself with lethal force under the "castle doctrine" and that such defense would be unassailable at trial.[25]

Furthermore, while I recognize that it ordinarily is inappropriate for a court to make credibility determinations at a preliminary hearing,[26] the private criminal complaint process must, like a preliminary hearing, serve to protect the right of the accused against unlawful arrest and detention.[27] The law surrounding Rule 506 must account for the fact that private complainants inevitably will be interested parties, who—unlike district attorneys—do not necessarily have any legal training and were not entrusted by their communities with the exercise of prosecutorial authority. Imagine, for instance, that a private complaint is filed alleging an assault at a nightclub, and the complainant produces only his friends, all of whom were inebriated when the incident occurred, as witnesses. Under *Benz*, this hypothetical complainant would have made out a *prima facie* case and could compel action. More is required.

But if *Benz* set the bar too low, the Majority sets the bar too high. The Majority allows for relief only where a private complainant can demonstrate bad faith, fraud, or unconstitutionality in the prosecutor's decision-making.[28] Imagine that a prosecutor acting in good faith disapproves a Rule 506 complaint that describes a kidnapping. The

---

[25] *See* 18 Pa.C.S. § 505(b)(2.1); *Commonwealth v. Childs*, 142 A.3d 823, 824 n.1 (Pa. 2016) (explaining that "the castle doctrine is a specialized component of self-defense, which recognizes that a person has no duty to retreat from his or her home before using deadly force as a means of self-defense").

[26] *See Commonwealth v. Perez*, 249 A.3d 1092, 1102 (Pa. 2021).

[27] *See id.*

[28] *See* Maj. Op. at 24.

prosecutor grounds his decision in the fact that the alleged perpetrator did not confine his victim to a remote geographic location. The complainant might cite this Court's opinion in *Commonwealth v. Rushing*, 99 A.3d 416, 425 (Pa. 2014), to establish that a "place of isolation," as required by the statute, "is not geographic in nature, but contemplates the confinement of a victim where he or she is separated from the normal protections of society in a fashion that makes discovery or rescue unlikely."[29] The prosecutor would be incorrect as a matter of law. But it could not be said—and would be nearly impossible to prove—that the prosecutor made his decision in bad faith, or with fraudulent or unconstitutional aims in mind.

Instead, I would adopt a familiar definition of what constitutes an abuse of discretion, thereby preserving the core of our current Rule 506 jurisprudence and allowing for relief where a prosecutor's decision results from clear legal error. This Court has said many times that "[a]n abuse of discretion exists when [a] trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will."[30] We also have stressed that an abuse of discretion is not merely an error of judgment,[31] and that it includes instances of the law being overridden or misapplied.[32] Private complainants could find

---

[29]    *See* 18 Pa.C.S. § 2901(a).

[30]    *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1123 (Pa. 2000). *See also Metal Green Inc. v. City of Phila.*, 266 A.3d 495, 513 (Pa. 2021) (quoting *Harman*); *Mader v. Duquesne Light Co.*, 241 A.3d 600, 607 (Pa. 2020) (same); *Commonwealth v. Banks*, 29 A.3d 1129, 1135 (Pa. 2011) (citing *Commonwealth v. Frey*, 904 A.2d 866, 872 n.9 (Pa. 2006) (same)).

[31]    *See Paden v. Baker Concrete Construction, Inc.*, 658 A.2d 341, 343 (Pa. 1995).

[32]    *See Mielcuszny v. Rosol*, 176 A. 236, 237 (Pa. 1934) (holding that "if in reaching a conclusion the law is overridden or misapplied . . . discretion is abused").

relief from decisions based in legal error,[33] as well as decisions made in bad faith or with fraudulent or unconstitutional aims.[34] They could not, however, compel action where a district attorney reasonably determines that a case lacks credible evidence or is doomed to go nowhere in light of an affirmative defense.[35]

Perhaps the most consequential difference between an abuse of discretion standard and the "bad faith, fraud, or unconstitutionality" standard is that the former still requires a prosecutor to wield his or her discretion and to justify a disapproval decision. If a district attorney disapproves a Rule 506 complaint and offers no explanation whatsoever, the complainant could argue that the decision was "arbitrary" or "capricious." Proving that a wordless refusal resulted from "bad faith, fraud, or unconstitutionality," on the other hand, would be like wringing water from a stone. In adopting such a stringent standard, the Court renders the private criminal complaint review process so difficult to navigate that review effectively becomes a nullity.

## II.

My views concerning the proper framework for the evaluation of Rule 506 complaints aside, I further oppose the Majority's decision to apply, in the first instance, its new standard to the facts of the controversy before us instead of remanding the matter for further development by the parties. The Majority states that it "cannot conclude that

---

[33] *See Mielcuszny*, 176 A. at 237 ("if in reaching a conclusion the law is overridden or misapplied . . . discretion is abused"); *Harman*, 756 A.2d at 1123 (including within the abuse of discretion standard those instances where the entity wielding that discretion "has failed to apply the law").

[34] *See id.* (including within the abuse of discretion standard decisions that are "arbitrary, or capricious . . . or . . . motivated by partiality, prejudice, bias, or ill will").

[35] *See id.* (including within the abuse of discretion standard those instances where the entity wielding that discretion renders "a judgment that is manifestly unreasonable").

the [district attorney's] decision to disapprove the [c]omplaint . . . amounted to bad faith, occurred due to fraud, or was unconstitutional."[36]  But it simultaneously recognizes that whether the *prosecutor* abused her discretion is not our question, and that, "under ordinary circumstances, we would be 'limited to ascertaining the propriety of the *trial court's* actions.'"[37]  The Superior Court has established that it will not disturb a trial court's ruling regarding a Rule 506 complaint

> unless the record contains no reasonable grounds for the court's decision, or the court relied on rules of law that were palpably wrong or inapplicable. Otherwise, the trial court's decision must stand, even if the appellate court would be inclined to decide the case differently.[38]

The Majority invokes the concept of judicial economy, and argues that "[t]he circumstances presented here are far from ordinary because, through this decision, [it has] created a new standard of review . . . [which] the trial court could not have applied" below.[39]

I disagree that the creation or modification of a legal rule by this Court represents a circumstance that is "far from ordinary."[40]  A significant portion of our docket deals with fashioning and tweaking standards for use in the lower courts, and the decision between

---

[36]     Maj. Op. at 26.

[37]     *Id.* at 25 (emphasis added) (quoting *Brown I*, 669 A.2d at 990).

[38]     *Michaliga*, 947 A.2d at 792.  With respect to certain questions, trial courts that observe disputes unfolding in real time have a better vantage point than appellate courts, which are limited to review of cold records.  *See Interest of S.K.L.R.*, 256 A.3d 1108, 1129 (Pa. 2021) ("trial courts are on the front lines"); *Commonwealth v. McCracken*, 659 A.2d 541, 551 (Pa. 1995) (noting that trial courts have the opportunity to observe demeanor). Because the private criminal complaint review process frequently will call for an assessment of the prosecutor's alleged bad faith, partiality, or caprice—all of which might be grounded in first-hand observation of how arguments are presented or how litigation proceeds—I see no reason to depart from the Superior Court's rule in *Michaliga*, and I would adopt it as our own.

[39]     Maj. Op. at 25.

[40]     *Id.*

remanding a case for adjudication in light of an opinion and resolving it ourselves is often a prudential one.[41] Here, I discern no reason why Ajaj should not be afforded the opportunity to develop new arguments and to hone those he has already raised in light of a new rule. He submitted briefing that followed precedent as it existed at the time of his appeal, prevailed before the trial court and the Superior Court, and cannot be expected to have argued or satisfied an unknown standard.

Even if this Court were to apply the new standard to the facts before us, the Superior Court's order should be affirmed. We must recognize that, in this case, the trial court's ruling did not turn upon the now-defunct *de novo* standard of review for legal reasons alone. Judge Tilson also concluded that the Commonwealth's asserted policy considerations "fail[ed] to pass muster" under the abuse of discretion standard.[42] The judgment in favor of Ajaj therefore was based upon two alternative grounds, and we may disturb it only if "the record contains no reasonable grounds for the court's decision."[43] I would find that such reasonable grounds exist, even under the "bad faith, fraud, or unconstitutionality" standard.

Because the Majority finds that "the Commonwealth's evidentiary concerns . . . are sufficient to support its discretionary decision to disapprove" Ajaj's complaint, it does not consider the policy-based reasons that the prosecutor advanced.[44] However, the interplay between the prosecutor's evidentiary justification and her policy justifications

---

[41] *Compare Commonwealth v. Melendez*, 676 A.2d 226, 231 (Pa. 1996) (adopting a limitation upon the independent source rule and then applying it to the case *sub judice* without remand), *with Commonwealth v. Romero*, 183 A.3d 364, 406 (Pa. 2018) ("[W]e remand this case to allow the Commonwealth the opportunity to introduce the arrest warrant . . . pursuant to the standard we have articulated herein[.]").

[42] Tr. Ct. Op. at 27.

[43] *Michaliga*, 947 A.2d at 792.

[44] Maj. Op. at 26 n.12.

was pivotal to the trial court's analysis. Judge Tilson's reasoning revolved around the fact that the prosecutor "changed tack,"[45] put Ajaj "at a disadvantage by leading him to believe he would be entitled to *de novo* review . . . only to heighten the standard of review" when the prosecutor belatedly raised policy concerns,[46] and "wait[ed] almost two months after the filing of [Ajaj's] complaint and more than thirty days after disapproving it to raise" an alternative justification for disapproval.[47] The trial court found that ADA Ringwood abused her discretion "in *purporting to* base disapproval of [Ajaj's] private criminal complaint," on policy,[48] and the court repeatedly used scare quotes around references to "policy reasons," suggesting doubt as to the genuineness of those reasons.[49]

Moreover, the existence of a policy by which "the Montgomery County District Attorney's Office does not approve private complaints alleging a felony" called into question the Commonwealth's citation of evidentiary concerns in the first place.[50] As Judge Tilson acknowledged, it would have been "simple enough to have stated [this policy] at the outset," and the prosecutor "presented no evidence" of the policy's existence.[51] Judge Tilson also recognized that the policy against approving Rule 506 complaints alleging a felony would "[wipe] from the books for consideration in the private

---

[45]    Tr. Ct. Op. at 15.

[46]    *Id.* at 20.

[47]    *Id.* at 20-21.

[48]    *Id.* at 27 (emphasis added).

[49]    *See id.* at 15 ("previously unarticulated 'policy' reasons"); *id.* at 20 ("the broad-ranging 'policy concerns' that it did not raise"); *id.* at 27 ("[t]he Commonwealth's belatedly-raised 'policy reasons' for disapproving the private criminal complaint"); *id.* at 27-28 ("but that is not what the District Attorney's alleged 'policy decision' here says"); *id.* at 28 ("the District Attorney's alleged 'policy' of not prosecuting a felony on a private complaint").

[50]    *Id.*

[51]    *Id.*

complaint setting" a number of serious crimes, regardless of whether the complaint was well-founded.[52] Indeed, such a categorical rule undermines the notion that the district attorney's office afforded Ajaj the individual review to which he is entitled or has wielded its discretion at all. It opens the door to capricious and unpredictable decision making. Herein lies another basis for allowing the trial court's judgment to stand.

While appellate jurists may have exercised their judgment differently had they been in Judge Tilson's position, that is neither here nor there. I discern nothing in the record that empowers this Court to cast the trial court's conclusion aside as unreasonable.

In light of precedent and the record, and cognizant of our limited appellate function, I would apply the abuse of discretion standard as described above[53] and would affirm the reasoning of the trial court and the Superior Court insofar as those tribunals found that the Commonwealth abused its discretion in denying Ajaj's complaint. Barring that result, and in the alternative, this Court should vacate the Superior Court's order and remand,

---

[52]     *Id.*

[53]     As an aside, I must distance myself from the Majority's suggestion that "[t]here is simply nothing about [the determination of whether a prosecutor's disapproval decision amounted to bad faith, occurred due to fraud, or was unconstitutional] that requires a court of common pleas to exercise discretion," and that an abuse of discretion standard would therefore be "improper" in this context. Maj. Op. at 25 n.11. Beyond the fact that, as discussed, our case law demonstrates that a misapplication of the law can constitute an abuse of discretion, *see Mielcuszny* 176 A. at 237, I note that appellate courts often review issues that appear to be pure questions of law through that lens. Reviewing a trial court's application of the concept of "bad faith, fraud, or unconstitutionality" is not so different from the manner in which we assess determinations about the admissibility of evidence or a party's interest in intervention that this Court should hesitate to apply the abuse of discretion standard here. *See Commonwealth v. Flor*, 998 A.2d 606, 623 (Pa. 2010) ("We will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion."); *Wilson v. State Farm Mut. Auto. Ins. Co.*, 517 A.2d 944, 947 (Pa. 1986) ("It is well established that 'a question of intervention is a matter within the sound discretion of the court below and unless there is a manifest abuse of such discretion, its exercise will not be interfered with on review.'") (quoting *Darlington v. Reilly*, 69 A.2d 94, 86 (Pa. 1949)).

rather than apply its "bad faith, fraud, or unconstitutionality" standard in the first instance. Only by reinventing the rule, denying Ajaj the opportunity to argue under this reinvented rule, depriving the lower courts of the opportunity to apply the rule in the first instance, and omitting any analysis of the prosecutor's shifting rationales does the Majority avoid that result.

## III.

I would not, however, affirm the lower courts' judgments in their entireties. Having found no reason to disturb those courts' conclusions that the Commonwealth abused its discretion in denying the Rule 506 complaint, I discern thorny constitutional questions that arise concerning the remedy to which Ajaj is entitled.

While the *Brown II* Court split three-to-three regarding the application of relevant law to the facts of that case and the definition of bad faith, even those who voted to reverse explicitly recognized that the standard of review in Rule 506 cases "*sufficiently safeguards the concept of separation of powers* which [was] at the heart of [the] appeal."[54]  I believe that this assertion would benefit from the Court's attention.

The private criminal complaint has a long history in our Commonwealth.  At Pennsylvania's founding, "private citizens were the driving force behind criminal prosecutions."[55]

> When a crime was committed in early colonial times, the victim searched
> for the criminal, arrested him (or paid the local sheriff to make the arrest),
> drew up indictments, prosecuted the criminal personally (or hired a
> prosecutor), and sometimes even served as the criminal's jailer if the

---

[54]     *Brown II*, 708 A.2d at 86 (Opinion in Support of Reversal) (emphasis added).

[55]     Beth A. Brown, Note, *The Constitutional Validity of Pennsylvania Rule of Criminal Procedure 133(b)(2) and the Traditional Role of the Pennsylvania Courts in the Prosecutorial Function*, 52 U. PITT. L. REV. 269, 274 (1990) ("Brown Note").  Rule 133 was a precursor of Rule 506.

criminal could not make restitution for his crime. Thus, our colonial forefathers performed the roles of police, prosecutors, and jailers. This system was a result of the overwhelming influence of both English common law and procedure, and the belief that crime was an offense against an individual victim.[56]

Public prosecution steadily became the norm over the course of the 19th century, and our General Assembly provided for the election and installment of district attorneys for the first time in 1850.[57] But several states "resisted the extinction of the private prosecutor and attempted to preserve some role for the private citizen in criminal proceedings."[58] Pennsylvania joined this trend when it adopted the Act of March 12, 1866, which empowered citizens to petition a court to initiate criminal proceedings upon a private complaint, and allowed them to conduct the entire proceedings themselves, as if they were district attorneys.[59]

This Court confronted that statute's constitutionality several years later on separation of powers grounds. We held that

> [w]hile the legislature may not abolish the office [of district attorney], it can control the officer. [It] can regulate the performance of his duties, and punish him for misconduct, as in the case of other officers. And where he neglects or refuses to act, or where . . . it is improper or indelicate for him to act, it is competent for the legislature to afford a remedy. This is all that the Act of 1866 does, and we think that its provisions are not obnoxious to any constitutional provision.

*Commonwealth v. McHale*, 97 Pa. 397, 406 (1881). District attorneys undoubtedly have "generally and widely recognized power to conduct criminal litigation . . . to decide whether and when to prosecute, and [to decide] whether and when to continue or discontinue a

---

[56]    *Id.*

[57]    *See Commonwealth ex re. Specter v. Bauer*, 261 A.2d 573, 575 (Pa. 1970).

[58]    Brown Note at 275; *see also* Note, *Private Prosecution: A Remedy for District Attorneys' Unwarranted Inaction*, 65 YALE L. J. 209, 218-19 (1955) (recognizing that, as late as the mid-20th century, thirty states retained private criminal prosecution in some form or another).

[59]    *See* 1866 Pa. Laws 85 § 1.

case."[60]  It appears that the private criminal complaint process was intended to serve as a carve-out from that general authority.

I acknowledge this history and our holding in *McHale* only to suggest that the issues of remedy and the separation of powers in these cases are complex.  We do not have briefing before us addressing these issues.  Neither Ajaj nor the Commonwealth develops arguments about what relief the judicial creation that is Rule 506 might afford, its history, and whether that relief might offend the delicate balance between coordinate branches of our government.[61]  The Attorney General and the Pennsylvania District Attorneys' Association raise some of these arguments as *amici*, but those arguments are not properly before the Court,[62] and even they recognize private criminal complaints as "[o]ne very narrow exception" to the rule that prosecutors wield great, nearly-unfettered discretion.[63]

Without the benefit of developed advocacy on this constitutional question, I would affirm the substantive rationale below, vacate the Superior Court's order, and remand the

---

[60]    Brown *II*, 708 A.2d at 84.

[61]    While I reserve judgment upon this question until a case is properly before the Court, I acknowledge that some remedies might offend the separation of powers, while others might not.  For instance, it is conceivable that a court's order commanding a prosecutor to act would pose a greater threat to our constitutional order relative to an order instructing the same prosecutor to reconsider his or her decision in light of a trial court's opinion.  Perhaps the option of an aggrieved private complainant, like Ajaj, hiring private counsel who could then (if judicially approved) operate in the district attorney's proverbial shoes would fall somewhere in between.  *See* 16 P.S. § 1409 ("If any district attorney shall neglect or refuse to prosecute in due form of law any criminal charge regularly returned to the district attorney or to the court . . . the prosecutor may present a petition to the court [and] if the court is of the opinion that it is a proper case for a criminal proceeding or prosecution, it may direct any private counsel employed by such prosecutor to conduct the entire proceeding").

[62]    *See Commonwealth v. Cotto*, 753 A.2d 217, 224 n.6 (Pa. 2000) ("[a]n *amicus curiae* is not a party and cannot raise issues that have not been preserved by the parties")

[63]    *Amicus Curiae* Br. at 13.

case with instructions for the parties to submit briefing to that court regarding remedy. Because I believe that the Majority defangs the private criminal complaint process, applies its newly-articulated standard of review without giving the parties the opportunity to tailor their arguments to that standard, and escapes consideration of the looming separation of powers issue, I respectfully dissent.